UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CITICAPITAL COMMERCIAL, CORP. and
CITICAPITAL BUSINESS CREDIT DIVISION,

Plaintiffs,

CIVIL NO. 02-63 (DSD/SRN)

v.

REPORT AND RECOMMENDATION

UNITED TRANSPORTATION, INC.,
CARLTON CLAXTON, and
ABC ESTATE,

Defendants.

The above matter came on for hearing before the Honorable John M. Mason, U.S. Magistrate Judge, on May 24, 2002 upon Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or Alternatively to Change Venue [Docket No. 10]. Thomas J. Lallier, Esq. appeared on behalf of Plaintiffs; Kathryn J. Bergstrom, Esq. appeared on behalf of Defendants. The matter is before the undersigned Magistrate Judge for a Report and Recommendation to the District Court pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B).

Upon the following Findings of Fact/Report, it is recommended that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or Alternatively to Change Venue [Docket No. 10] be denied.

## FINDINGS OF FACT/REPORT

## I. BACKGROUND

Plaintiffs Citicapital Commercial Corporation and Citicapital Business Credit Division are Delaware corporations that own and operate a Minnesota-based company

JUL 25 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

engaged in the factoring business for the transportation industry. Defendant United Transportation, Inc. ("United") is a Georgia corporation involved in the interstate transportation of goods that entered into a factoring contract with Plaintiffs. Defendant Carlton Claxton is a resident of the State of Georgia and the President and majority shareholder of United.

The factoring business generally involves one party agreeing to purchase invoices or receivables from another party at a discounted rate. After agreeing to purchase the receivables, the purchaser pays the seller of the invoices at the discounted rate and then collects the full amount owed under the invoice from the invoice debtor.

Plaintiffs have brought claims against Defendants alleging breach of their factoring contract based upon allegations that United collected money from a third-party obligor which Plaintiffs claim they were actually entitled to receive under the terms of their contracts with Defendants. Now before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction brought under Fed. R. Civ. P. 12(b)(2) or in the Alternative to Change Venue pursuant to Fed. R. Civ. P. 2(b)(3). Defendants contend that they have little or no contacts with Minnesota, and because Plaintiffs were the dominant parties in the business relationship, the matter should be dismissed for want of jurisdiction. Plaintiffs contend that Defendants' contacts with Minnesota are sufficient to confer this Court with general and/or specific jurisdiction.

## II. APPLICABLE STANDARDS

We begin by noting familiar principles which govern the consideration of this motion. "To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating, by a prima facie showing, that personal jurisdiction exists."

Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998)(citations omitted). Although the plaintiff bears the ultimate burden of establishing the existence of personal jurisdiction at trial by a preponderance of the evidence, on a motion to dismiss, the plaintiff need only make a prima facie showing. Northrup King Co. v. Compania Productora Semillas Algondoneras Selectas, S.A., 51 F.3d 1383, 1387 (8th Cir. 1995)(citations omitted). "For the purposes of a prima facie showing, the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor." Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE) Ltd., 89 F.3d 519, 522 (8th Cir. 1996)(citations omitted).

An analysis of whether a court has personal jurisdiction must take into account state and constitutional requirements. Wessels, Arnold & Henderson v. Nat'l Medical Waste, Inc., 65 F.3d 1427, 1431 (8th Cir. 1995). "The federal court in a diversity case must determine whether [the] defendant is subject to the court's jurisdiction under the state long-arm statute, and if so, whether exercise of that jurisdiction comports with due process." Stevens, 146 F.3d at 543 (quoting Moog World Trade Corp. v. Bancomer, S.A., 90 F.3d 1382, 1384 (8th Cir. 1996)). This two-part analysis requires the Court to first ask whether the activity of the defendant falls within the scope of the forum state's long-arm statute.

Minnesota's long-arm statute provides, in relevant part, as follows:

> As to a cause of action arising from acts enumerated in this subdivision, a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over any foreign corporation or any non-resident individual . . . in the same manner as if it were a domestic corporation or he were a resident of this state. The section applies if, in person or through an agent,

> the foreign corporation or non-resident individual:
>
> (a) Owns, uses, or possesses any real or personal property situated in this state, or
> (b) Transacts any business within the state . . . .

Minn. Stat. § 543.19, subd. 1. Courts have interpreted the Minnesota long-arm statute to extend jurisdiction to the outer limits permitted by the due process clause of the U.S. Constitution. Domtar v. Niagara Fire Ins. Co, 533 N.W.2d 25, 29 (Minn. 1995); Valspar Corp. v. Lukken Color Corp., 495 N.W.2d 408, 410 (Minn. 1992); Jarvis & Sons v. Freeport Shipbuilding, 966 F.2d 1248, 1249 (8th Cir. 1992). Thus, in Minnesota cases, the Court's focus need only be on constitutional issues, namely whether the assertion of jurisdiction satisfies due process of law.

The Supreme Court has stated that the fundamental due process question to be addressed is whether there are sufficient minimum contacts between the nonresident defendant and the forum state so that the assertion of personal jurisdiction over the nonresident defendant is consistent with the traditional notions of fair play and substantial justice. See, e.g., Burger King Corp. v. Rudzewick, 471 U.S. 462, 472 (1985); Worldwide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) ("We have said that the defendant's contacts with the forum State must be such that maintenance of the suit "does not offend 'traditional notions of fair play and substantial justice.'"); International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) ("due process requires only that in order to subject a defendant to a judgment in personam . . . he have such minimum contacts with it such that the maintenance of the suit does not offend the traditional notions of fair play and substantial justice"). To assist in the application of these broad principles, Courts have

articulated several standards to be considered in determining whether the exercise of jurisdiction over a "foreign" defendant is constitutionally permissible.

The principal consideration is fundamental fairness: "Once it has been decided that a defendant purposefully established contacts with a forum state, these contacts must be considered in light of other factors to determine whether the assertion of personal jurisdiction would agree with fair play and substantial justice." Minnesota Mining & Manufacturing Co. v. Nippon Carbide Indus. Co., 63 F.3d 694, 697 (8th Cir. 1995), cert. denied, 516 U.S. 1184 (1996) (citing International Shoe Co., 326 U.S. at 320). Therefore, "[e]ven if the defendant has purposefully established the necessary 'minimum contacts' within the forum State, consideration of 'fair play and substantial justice' may nevertheless defeat the reasonableness of jurisdiction." Sybartic, Inc. v. Interport Intern, Inc., 957 F.2d 522, 524 (8th Cir. 1992) (citing Burger King, 471 U.S. at 476-78).

The concept of "general jurisdiction" hinges upon a defendant's "continuous and systematic contacts with the forum state, regardless of whether the plaintiff's claim or claims are related to any of those contacts." Zumbro, 861 F. Supp. at 778. "General jurisdiction refers to the power of a state to adjudicate any cause of action and does not depend on the relationship between the cause of action and the contacts." Burlington Indus., 97 F.3d at 1103. The exercise of general jurisdiction comports with due process concerns "because a defendant whose contacts with the forum state are systematic and continuous should reasonably anticipate being haled into court there, even where the plaintiff's claims 'neither arise out of nor are related to the defendant's contacts with the forum.'" Zumbro, 861 F. Supp. at 778.

The Eighth Circuit Court of Appeals has established five factors to consider when determining whether general jurisdiction exists. Northrup King, 51 F.3d at 1388. They are: "(1) the nature and quality of defendant's contacts with the forum state; (2) quantity of contacts; (3) source and connection of the cause of action with those contacts; and, to a lesser degree, (4) the interests of the forum state in providing a forum for its residents; and (5) the convenience of the parties." Id. (citations omitted). The fourth and fifth considerations are secondary factors in the inquiry. Id.

Courts have "further elaborated on the third factor -- the relationship of the cause of action to the contacts -- to distinguish between specific and general jurisdiction." Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996). "The inquiry is whether the non-resident defendant 'has purposefully directed his activities at . . . the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities.'" Northrup King, 51 F.3d at 1387 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). "Specific jurisdiction" exists where a court "premises jurisdiction over a defendant upon the relationship of plaintiff's claims and defendant's forum state activities." Zumbro, Inc. v. California Nat'l Prods., 861 F. Supp. 773, 778 (D. Minn. 1994).

## III. MOTION TO DISMISS

### A. The Court Has General Jurisdiction Over Defendants

#### 1. Defendants' Contacts With Minnesota

This Court may exercise general jurisdiction over Defendants because they had sufficient minimum contacts with Minnesota and their contacts were systematic, substantial and continuous. For over 14 years, United conducted business in a systematic

and continuous manner with Minnesota companies. United's contacts with Minnesota began in 1987 when it initiated negotiations regarding a financial relationship it sought to develop with Plaintiffs' Minnesota-based company. In furtherance of that relationship, in September 1987, United applied to become a member of Plaintiffs' organization by submitting an application to Plaintiffs in Minnesota. In October 1987, United executed a contract with Plaintiffs under which it agreed to become a member of Plaintiffs' organization for six months. In May 1988, United executed a permanent contract to become a member of Plaintiffs' organization. At about the same time, Mr. Claxton entered into a Guaranty with Plaintiffs under which he agreed to be personally responsible for United's debts to Plaintiffs.

United and Plaintiffs conducted several millions of dollars of business in Minnesota between 1987 and 1995. Between 1995 and 2001, United conducted over $67 million in business with Plaintiffs and their subsidiary in Minnesota. While conducting that business, United routinely sent invoices to Plaintiffs in Minnesota and received payments from Plaintiffs who sent the checks from Minnesota. During the same period of time, United also had an ongoing business relationship with another Minnesota company, C.H. Robinson, with whom it has done business in Minnesota since 1989.

United also routinely communicated with Plaintiffs in Minnesota by fax, mail, e-mail and telephone. Although such communications alone are not sufficient to confer the Court with personal jurisdiction, they are appropriately considered among United's other contacts with Minnesota. See, e.g., St. Jude Medical, Inc. v. Lifecare Int'l, Inc., 250 F.3d 587, 591-92 (8th Cir. 2001) (jurisdiction proper where party pursued business relationship by phone and mail with Minnesota resident); Northrup King, 51 F.3d at 1388-

89 (party purposefully availed itself of the privilege of conducting business in Minnesota by seeking out a Minnesota company and endeavoring to foster a continuing business relationship with that company); Marquette, 270 N.W.2d at 297.

Defendants place significant reliance on Dent-Air, Inc. v. Beech Mountain Air Service, 332 N.W.2d 904 (Minn. 1983) to support their argument that since Plaintiffs were the "dominant party" in their business relationship, Defendants' contacts with Minnesota were insufficient to confer this Court with personal jurisdiction over them. We find, however, that Plaintiffs' reliance on Dent-Air is misplaced. In Dent-Air, the jurisdictional dispute focused on the parties' argument over the importance of the "buyer-seller distinction." The plaintiff argued that since the defendant was the dominant party in the business relationship, the court should exercise jurisdiction over it. Since it was the plaintiff who sought out the defendant and initiated the parties' relationship, the Minnesota Supreme Court rejected the plaintiff's claim that the defendant's dominance during the relationship provided an adequate basis upon which the court could assert jurisdiction over the defendant.

Defendants also rely on North American Financial Corp. v. Amgrar Gesellschaft Fur Farmlagen, 702 F. Supp. 1435 (D. Minn. 1989) and KSTP-FM, LLC v. Specialized Communications, 602 N.W.2d 919 (Minn. Ct. App. 1999), but as with Dent-Air, these cases are not controlling. In North American, the district court found that the defendant's contacts with Minnesota were insufficient to allow the court to exercise jurisdiction over it, in part, because most of the correspondence and negotiations leading up to execution of the contract at issue were conducted outside of Minnesota between the plaintiff and the defendant's agent who was located in Maryland. In essence, the court

found the third party provided a buffer between the defendant and its contacts with Minnesota. None of the North American defendants had any other connection to Minnesota.

As with North American, in KSTP, there was a third party involved in the business relationship between the plaintiff and defendant. There, the court found that the nature and quality of the defendant's contacts with Minnesota would not support the assertion of jurisdiction, in large part, because the defendant did not solicit the initial sale. Instead, a third party contracted for the sale of the product and the defendant was unaware that the product would end up in Minnesota.

Here, there is a dispute as to who initiated the contact. According to Plaintiffs, "United contacted [it] at its St. Paul, Minnesota location to become a user member." (Affidavit of Neil Charpenter at ¶ 3). Mr. Claxton describes Defendants' initial contact with Plaintiffs in Minnesota as follows:

> In 1987, United Transportation decided to look for a factoring arrangement for a portion of its receivables. I talked with a business contact at a local company, and that contact indicated that they used [Plaintiff] in Minnesota for their factoring arrangement. I believe that my business contact passed United Transportation's name to [Plaintiff], and then [Plaintiff] sent us information and an application to apply for a factoring relationship.

(Affidavit of Carlton Claxton at ¶ 4) Other than the possibility that a third party may have forwarded Defendant's name on to Plaintiffs, there was no third party involved in the business relationship between the parties. Instead, the correspondence, negotiations and business dealings were all conducted directly between Plaintiffs and Defendants. For purposes of analyzing a jurisdictional question, however, we assume that the Plaintiffs'

allegations are true. Hardrives, Inc. v. City of Lacrosse, 240 N.W.2d 814, 816 (Minn. 1976). Based upon such assumptions, we take Plaintiffs' allegations that Defendants initiated the relationship as true.

In addition, it is legally insignificant whether United, Mr. Claxton or a third party actually initiated the contact. What matters is that Defendants, either directly or indirectly, sought out Plaintiffs to develop a business relationship. Thus, even if we were to assume Defendants' allegations were true, it would not change our conclusion because whoever initiated the contact was acting as Defendants' agent when he, she or it initiated the contact with Plaintiffs in Minnesota. See, e.g., Minn. Stat. § 543.19, subd. 1 ("The section applies if, in person or through an agent, the foreign corporation or non-resident individual . . . transacts any business within the state . . . ."); Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 820 n.1 (8th Cir. 1994) ("when commercial activities are carried on in behalf of an out-of-state party those activities may sometimes be ascribed to the party, at least where it is a primary participant in the enterprise and has acted purposefully in directing those activities").

The pivotal question for purposes of a minimum contacts analysis is not who the dominant party was throughout the course of the relationship. Instead, the relevant question is whether Plaintiffs made a prima facie showing that Defendants sought them out and initiated the relationship such that they purposefully availed themselves of conducting business activities within Minnesota. See Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239 (1958). At trial, Plaintiffs' burden will increase and they will have to show by a preponderance of the evidence that jurisdiction is proper. But at this early stage of the litigation, we are satisfied that Plaintiffs have made a prima facie showing that Defendants'

contacts with Minnesota are such that asserting jurisdiction over them would not offend traditional notions of fair play and substantial justice.

**2. The Nature and Quality of Defendants' Contacts With Minnesota**

This factor weighs in favor of asserting jurisdiction over Defendants. The nature and quality of United's contacts with Minnesota were not random, fortuitous or isolated. Instead, they were intentional and ongoing business-related contacts that show United purposefully availed itself of conducting business in Minnesota by seeking out Plaintiffs in Minnesota and establishing a permanent business relationship them. Contacts of such a nature are sufficient to confer a court with jurisdiction over a defendant. See Northrup King, 51 F.3d at 1388-89 (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S. Ct. 1473, 1478-79 (1984) and Hanson, 357 U.S. at 253, 78 S. Ct. at 1239)).

In addition, United applied for and was granted federal authority to operate as a contract and commercial carrier throughout the continental 48 states. As a condition of receiving such authority, United was required to appoint agents for service of process in "each State in which it is authorized to operate and for each State traversed during such operations." See 49 C.F.R. § 366.4. As a motor carrier, United was also subject to the provisions of 49 U.S.C. § 13304(a) which provides that "[a] motor carrier . . . shall designate an agent in each State in which it operates by name and post office address on whom process issued by a court with subject matter jurisdiction may be served in an action brought against that carrier. . . ." United appointed a person in Blue Earth, Minnesota to serve as its agent in Minnesota, but it contends that its appointment of an agent in Minnesota does not mean that it is subject to the jurisdiction of Minnesota courts. It has long been settled, however, that the purpose of appointing such agents is to enable

residents of states that transact interstate business through motor carriers to enforce their rights in contract or tort in courts of competent jurisdiction within the state where the injuries were suffered. See, e.g., Madden v. Truckaway Corp., 46 F. Supp 702 (D. Minn. 1942); Gerot v. Poe, 11 F.R.D. 281 (N.D. Ill. 1951); Davies v. Mahenes, 88 F. Supp. 550 (D. Md. 1949).

The nature and quality of Mr. Claxton's contact with Minnesota also supports the exercise of jurisdiction over him. Under the terms of his personal guarantee, Mr. Claxton agreed to be personally responsible for "any and all indebtedness or obligations . . . for which [United] may hereafter become liable or indebted" to Plaintiffs. Therefore, Mr. Claxton's obligations under the guarantee were to continue so long as United continued to do business with Plaintiffs or until the guarantee was revoked. Thus, the nature and quality of Mr. Claxton's personal guarantee was such that it induced Plaintiffs to enter into a permanent contract with United. According to Plaintiffs, but for Mr. Claxton's personal guarantee, it would not have entered into a permanent contract with United. Where, as here, it appears that the Defendant's contacts with this state were of such a nature and quality to induce a transaction within this state, the Court is justified in subjecting a defendant to the personal jurisdiction of the Court under the purposeful availment test without offending traditional notions of fair play and substantial justice. Marquette, 270 N.W.2d 290 (Minn. 1978).

**3. Minnesota Has a Strong Interest in Providing a Forum For its Residents.**

Plaintiffs are Minnesota-based companies that claim they were injured by non-resident Defendants. Minnesota has a strong interest in providing a forum for its

residents who seek redress for injuries suffered at the hands of non-resident defendants. See, e.g., Northrup, 51 F.3d at 1389 ("Minnesota has an obvious interest in providing a local forum in which its residents may litigate claims against non-residents."). Thus, although this factor is not dispositive, its weighs in favor of asserting jurisdiction over Defendants.

**4. The Convenience of the Parties Weighs Evenly for Plaintiffs and Defendants.**

This factor does not weigh in favor of either party. Defendants claim that they will suffer hardship in the form of travel and lodging expenses if they are forced to litigate this matter in Minnesota. They also claim that all of their witnesses, evidence and businesses are located in Georgia. Thus, moving the witnesses, documents and being away from their business would cause them hardship. Plaintiffs claim that all of its witnesses, evidence and other materials are in Minnesota and thus it would suffer a hardship if it were forced to litigate the dispute in Georgia.

**B. The Court Has Specific Jurisdiction Over Defendants.**

The source and connection of Plaintiffs' cause of action relate directly to Defendants' contacts with Minnesota. A court may assert specific personal jurisdiction over non-resident defendants where they have purposefully directed their activities at the forum state and the litigation arises from injuries allegedly sustained as a result of the Defendants' activities. Northrup King, 51 F.3d at 1387. Here, the gravamen of Plaintiffs' claim relates to funds collected by Defendant United from a third-party. United collected the funds based upon an invoice it submitted the third-party for services rendered by United. According to Plaintiffs, however, under their contracts with Defendants they and

not Defendants were entitled to receive the payment from the third-party because Plaintiffs purchased the invoice from Defendants, thus divesting Defendant United of any right to collect on the invoice. Plaintiffs now claim that they have been injured because they cannot collect from the third party since it has already paid Defendants. Plaintiffs also contend that Defendants have been paid twice under the invoice in question, once from Plaintiffs and once from the invoice debtor. Thus, this litigation arises as a direct result of the business contacts between Defendants and Plaintiffs.

As a result of his personal guarantee of the contract between Plaintiffs and United, Mr. Claxton's involvement in the litigation also arose directly from his contacts with Plaintiffs in Minnesota. Where jurisdiction is based upon a single transaction contact, the nature and quality of the contact becomes dispositive. Marquette Nat'l Bank of Minneapolis v. Norris, 270 N.W.2d 290, 295 (Minn. 1978); Maiers Lumber & Supply, Inc. v. Chancey Trailers, 354 N.W.2d 585, 587 (Minn. Ct. App. 1984). "The fact that the non-resident [defendant was] never physically present in the state in the course of the transaction . . . is of no significant consequence." Id. Rather, the critical question is whether the defendant purposefully initiated the transaction giving rise to the litigation. Id. at 296-97.

After considering all of the factors, we are satisfied that hailing Defendants into court in Minnesota would not offend traditional notions of fair play and substantial justice. Therefore, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [Docket No. 10] should be denied.

## III. MOTION TO CHANGE VENUE

In the event that their Motion to Dismiss was denied, Defendants asked in the alternative that this Court transfer venue of this action to Georgia. The factors determining whether venue should be transferred are set forth at 28 U.S.C. § 1404 (a), which provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The purpose of 28 U.S.C. § 1404(a) is to prevent waste of time, energy, and expense, as well as to protect the litigants, witnesses and public against unnecessary inconvenience and expense. Van Dusen v. Barrack, 376 U.S. 612, 616 (1964). Under 28 U.S.C. § 1404 (a), the party bringing a motion to transfer bears the burden of proving that the action should be transferred. Stinnett v. Third Nat'l Bank of Hampden City, 443 F. Supp. 1014, 1017 (D. Minn. 1978). As the Eighth Circuit Court of Appeals has indicated, this is a substantial burden:

> Change of venue, although within the discretion of the district court, should not be freely granted. Courts are in the business of deciding cases, not playing procedural hockey among available districts at the whim of dissatisfied parties.

In re Nine Mile Ltd., 692 F.2d 56, 61 (8th Cir. 1982). Therefore, unless the moving party can make a "clear showing that the action should be transferred," the motion must be denied. Medtronic, Inc. v. American Optical Corp., 337 F. Supp. 490, 495 (D. Minn. 1971); Norval Indus., Inc. v. Superior Co. Inc., 515 F. Supp. 895, 899 (D. Minn. 1981).

In addition, there is a presumption in favor of the plaintiff's choice of forum. Christensen Hatch Farms, Inc. v. Peavey Co., 505 F. Supp. 903, 911 (D. Minn. 1981);

accord Brockman, 923 F. Supp. at 1179. The presumption is stronger where the plaintiff files suit in the district where it resides. Sky Valley Ltd. Partnership v. ATX Sky Valley, Ltd., 776 F. Supp. 1271, 1276 (N.D. Ill. 1991); see Dunn v. Soo Line Railroad Co., 864 F. Supp. 64, 65 (N.D. Ill. 1994). Furthermore, transfer is not appropriate where a change in venue would merely shift inconvenience from one party to the other. Nelson v. Bekins Van Lines, Co., 747 F. Supp. 532 (D. Minn. 1990).

In this case, Defendants have argued for a change of venue to Georgia on the grounds that it will be more convenient for the Defendants and to their witnesses who live in Georgia. But the opposite would be true for the Plaintiffs. After carefully considering the Parties' arguments, we find that the traditional "convenience" factors do not weigh heavily in favor of either party. Each has interests in litigating the matter in their respective states, none of which are more compelling than any other. Moreover, the Parties have failed to identify the potential trial witnesses, and the testimony that these witnesses would provide. This makes it impossible for the Court to "examine the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum." Reid-Walen v. Hansen, 933 F.2d 1390, 1396 (8th Cir. 1991). See also Durabla Manufacturing Company v. Continental Cas. Co., No. 98-1596 (JRT/RLE), 1998 WL 957250, at *4 (D. Minn. Oct. 26, 1998) ("[i]n attempting to show that the convenience of the witnesses would be better served in a proposed transferee forum, generalized allegations, that are bereft of any description of what these witnesses' testimony would be, is not sufficient.") (citations omitted).

At this early stage of the litigation, it is simply impossible to conclude that this factor favors either party. It is indeed unrealistic to expect either party to submit accurate witness lists which summarize the anticipated testimony of any particular individual. Nor could we conclude that the anticipated testimony will relate to material and important issues.

## RECOMMENDATION

For the reasons set forth above, it is recommended that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or Alternatively to Change Venue [Docket No. 10] be denied.

Dated: July 24, 2002

SUSAN RICHARD NELSON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **August 8, 2002** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **August 8, 2002**.